Filed 6/25/26  P. v. Garcia-Flores CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEVIN ARMANDO GARCIA-FLORES,<br><br>    Defendant and Appellant. | A172890<br><br><br>(City & County of San Francisco Super. Ct. No. CRI-24003421) |

Kevin Armando Garcia-Flores appeals from his convictions for criminal threats (Pen. Code, § 422, subd. (a)) and misdemeanor assault (*id.*, § 240), challenging the trial court's evidentiary rulings concerning the admissibility of character evidence and impeachment evidence under Evidence Code section 352.[1]  We affirm.

## BACKGROUND

### A.

As relevant here, the information charged Garcia-Flores with kidnapping (Pen. Code, § 207, subd. (a); count one); false imprisonment (*id.*, § 236; count two); and domestic violence (*id.*, § 273.5, subd. (a); count three) in connection with an incident that allegedly occurred on October 5, 2023.  The prosecution also

---

[1] Undesignated statutory references are to the Evidence Code.

charged Garcia-Flores with making criminal threats (*id.*, § 422, subd. (a); count four) and committing assault with force likely to cause great bodily injury (*id.*, § 245, subd. (a)(4); count five), in connection with a May 4, 2023 incident. Ultimately, a jury convicted Garcia-Flores of making criminal threats (count four) and committing misdemeanor assault (a lesser included offense of count five; *id.*, § 240) and it acquitted him of the remaining charges.

The trial court sentenced Garcia-Flores to the lower term of 16 months for the criminal threats and 180 days in jail for the misdemeanor assault, to be served consecutively. Based on his time served and other credits, his sentence was deemed satisfied.

### B.

The charged offenses stemmed from Garcia-Flores' interactions with a young woman, K., whom he had been seeing since 2019. At the time of the trial, which took place in late 2024 and early 2025, K. was 19 years old. Garcia-Flores was seven years older than K.

Garcia-Flores and K. had a rocky relationship, and they had tried to break up several times. At some point during their relationship, K. learned that Garcia-Flores was married to a woman named J. In 2020, K. broke up with Garcia-Flores, but they subsequently got back together after he told her he was no longer with J. Later, K. learned that Garcia-Flores was still with J. and that the two had had a baby together in 2022. K. continued seeing him, however, because he told her he was no longer with J.

K. testified that she did not feel safe in the relationship because Garcia-Flores threatened her "[a]ll the time" and said "[t]hat he would kill [her]." According to K., Garcia-Flores was violent toward her and by 2022, the two had fights during which he would hit her. She tried to break up with him, telling him

2

that she wanted nothing to do with him, but he insisted that they were together. When she told him she wanted nothing to do with him, Garcia-Flores responded "[b]y getting mad and by hitting" her.

*May 4, 2023 Incident.* Garcia-Flores' convictions involved an incident that occurred on May 4, 2023. On that date, Garcia-Flores was hanging out with K. in the back seat of his parked car. He got mad when K. did not want to answer his questions, and he started to hit her. He threatened to kill her, and said "that wherever he saw [her], he would kill [her]." Garcia-Flores had a gun in the car so K. feared he would carry out his threat. He grabbed a baseball bat from the front passenger seat and hit K. twice on her left side. K.'s left arm was injured for weeks afterward. She did not make a police report at the time because she was afraid Garcia-Flores would do something to her or her family.

On May 9, K.'s mother noticed her bruises. According to her mother, K. seemed sad and worried, and she had no energy. A few days later, on May 12, K. reported the incident to the police. K. told the police that Garcia-Flores hit her left arm twice with a bat and that he had a gun in the trunk of his car. A police officer observed and photographed light-colored bruises on K.'s left arm and shoulder.

*October 5, 2023 Incident.* The kidnapping, false imprisonment, and domestic violence charges, of which Garcia-Flores was acquitted, related to events alleged to have occurred on October 5, 2023. K. testified that while Garcia-Flores was driving her around in his car for about an hour, the two were involved in an altercation. According to K., he reached into the back seat, where she was sitting, and pulled her hair and pummeled her head and left leg numerous times with his right fist. On two occasions, K. wrapped her hands around Garcia-Flores' neck, and he bit her twice on her right arm and pulled her

3

hair.  K. also hit him multiple times in the head.  K. provided conflicting testimony as to whether she voluntarily got into Garcia-Flores' car.  She also provided contradictory testimony about whether the child-safety locks were engaged and prevented her from exiting the car.  After Garcia-Flores stopped the car to go into a store, K. exited the car through an unlocked door.

During the trial, the trial court allowed the prosecution to present evidence about four other instances in which Garcia-Flores had allegedly committed domestic violence against K.  In addition, the court denied the defense's request to introduce evidence that, prior to K.'s relationship with Garcia-Flores, she had gotten into two fights at school.  Garcia-Flores challenges these rulings on appeal.

## DISCUSSION

### A.

Garcia-Flores contends that the trial court erred in permitting the prosecution to introduce evidence that he committed domestic violence on other occasions.  Before we address his arguments, some background is in order.

### 1.

Under section 1101, evidence of a person's character or character trait, including evidence of specific instances of conduct, is generally inadmissible to prove the person's conduct on a particular occasion.  (§ 1101, subd. (a).)  Evidence that a person committed other bad acts is admissible, however, if relevant to prove a fact *other than* the person's propensity to commit such acts, "such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident."  (§ 1101, subd. (b).)

The "long-standing" rule against propensity evidence (*People v. Falsetta* (1999) 21 Cal.4th 903, 913 (*Falsetta*)) reflects a

4

concern not that such evidence has no probative value, " *'but [that] it has too much.'* " (*People v. Alcala* (1984) 36 Cal.3d 604, 630-631 (*Alcala*).) The factfinder may " ' give excessive weight' " to evidence of a person's criminal disposition and may substitute proof that the person committed other bad acts for proof that the person committed the charged offense. (*Alcala*, at p. 631.)

Our Legislature has created some exceptions to the general rule, including the one in section 1109, which applies to domestic violence prosecutions. Under that provision, evidence that the defendant committed domestic violence on other occasions is not categorically inadmissible under section 1101; instead, the evidence is allowed if the evidence is not inadmissible under section 352. (§ 1109, subd. (a)(1).) Section 352, in turn, provides that the court "may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Thus, pursuant to section 1109, evidence that a defendant has committed domestic violence at other times is permitted if the probative value of the evidence is not substantially outweighed by the risk of its prejudicial effect.

**2.**

Here, Garcia-Flores challenges the admission of evidence concerning three other instances of domestic violence involving him and K.

*February 2022 incident*. K testified that in February 2022, she and Garcia-Flores were arguing in his parked car in San Francisco when he hit her. He pulled her hair, put his hands around her neck to choke her, and grabbed her by the arms. Days later, she told her parents what had happened. When her mother picked her up on February 15, 2022, K. was "in a desperate state" and her mother observed bruises on her arms. Her mother went with her to the police station. During the police

interview, an officer viewed cell phone photographs of K.'s injuries, depicting bruising on her shoulders and arms. The officer did not recall seeing any time or date stamps on the photographs.[2]

*March 2023 incident.* During a police interview about a different incident, K. showed a police officer cell phone photographs dated March 11 and March 14, 2023, depicting injuries she had suffered. K. was injured by Garcia-Flores while the two were in his parked car. Garcia-Flores became angry and started to hit her after she told him that she did not want to get back together or have sex with him. Garcia-Flores hit K. on her eye, left leg, and left arm, and he pulled her hair.

*May 12, 2023 incident.* K. testified that on May 12, 2023, she contacted J., Garcia-Flores' wife, and asked her to tell him to stop bothering her. The two agreed to confront him at the apartment he shared with J. They planned to confront Garcia-Flores about his cheating and tell him to leave K. alone. J. took a knife from the kitchen and kept it with her. When Garcia-Flores arrived home, J. confronted him about cheating on her while K. hid in a closet. After K. left the closet to surprise Garcia-Flores, he became angry and began throwing things at J. Garcia-Flores beat the two women, threatened to kill them, pulled their hair, and threw them to the floor. Garcia-Flores then obtained a knife.

On cross-examination, K. provided conflicting testimony. For example, she admitted that J. attacked Garcia-Flores. K. also asserted that the only thing he did to her, that she could remember, was kick her in the stomach.

---

[2] In connection with this incident, the information had alleged that, on or about February 8, 2022, Garcia-Flores had committed misdemeanor battery (Pen. Code, § 243, subd. (e)(1); count six). However, the trial court subsequently granted the defense's motion to set aside and dismiss that count pursuant to Penal Code section 995.

The jury also received the audio from a 911 call made by J. and K. On the call, J. informed the operator that "there's a man right here that is fucking hitting us and trying to kill us with a knife." At various points, J. relayed to the 911 operator, "[h]e's hitting, he's hitting!," "he's breaking everything," "[h]e's just kicking right now," and "[h]e's kicking -- he's abusing -- hitting her." During the call, a man's voice can be heard saying "bitch" and "fuck!' Eventually, Garcia-Flores left and J. said to the 911 operator: "could you please help us? Could you follow him? He just hit us, and right -- he just went to hitting us, and then he was trying to kill us with a knife." Later on the call, K. can be heard saying, "[t]ell them that she[]'s bleeding." After the police arrived, K. obtained a criminal protective order that required Garcia-Flores to stay away from both K. and J. Garcia-Flores pled nolo contendere to a charge of misdemeanor battery (Pen. Code, § 242) in connection with the May 12, 2023 incident.

In its evidentiary ruling, the trial court admitted evidence of the February 2022 and May 12, 2023 incidents pursuant to section 1109, but it excluded evidence of the March 2023 incident.[3]

With respect to the February 2022 incident, the trial court reasoned that it was "a pretty recent incident" with "numerous indicia of corroboration or reliability." The court noted that the incident was a charged offense that was subsequently dismissed in a Penal Code section 995 hearing and that K. reported the incident to both her mother and the police.

As for the May 12, 2023 incident, the court explained that it "should be admitted because it actually lead[s] to a conviction in San Mateo County, and it's the subject of the stay away order

_____

[3] The trial court also allowed the prosecution to introduce evidence of a July 2022 incident, but no evidence of such an incident was presented to the jury.

protecting [K.], and it's fairly close in time to the charged incidents." The court added: "I think it's highly relevant that he ultimately looked for a knife and he grabbed it, threatened to stab and kill them. [¶] I think that goes to fear, criminal threats, domestic violence." The court explained that the incident also "is relevant because the defendant is asserting self-defense[] [and] mutual combat," so "this incident does go to his motive or intent at the time of the . . . charged incidents." The court excluded as unduly prejudicial evidence that K. and J. hid the kitchen knives because they knew Garcia-Flores would try to grab them if he became angry, and evidence that his young son was at home at the time of the incident.

The court noted that it felt comfortable admitting evidence of the February 2022 and May 12, 2023 incidents because they were "more recent," they had "certain levels of corroboration," and "there are photographs, specific dates, specific time[s]" as to those incidents. The court elected to exclude the prosecution's other incidents "because I'm concerned about making sure that we balance the legislative purpose of [section] 1109 in permitting propensity evidence for prior domestic violence acts" while also "be[ing] mindful of [section] 352 and undue prejudice to the defendant." The court added: "I just don't want an excessive number of prior incidents."[4]

Although the trial court excluded evidence from the March 2023 incident, the jury ended up hearing the evidence when a police witness referenced photos from the incidents during prosecution questioning about another incident. Additional information about the incidents was elicited by the defense on cross-examination, and then by the prosecution on re-direct

[4] With respect to March 2023 incident, the court recognized that "it certainly seems like it's relevant and similar in conduct and close in time, and there's corroboration in terms of the photographs."

examination. As the trial court later explained, "there wasn't an objection, [and] I did not think it was appropriate for me to stop the questioning because sometimes counsel have strategies that change as the evidence comes in."

Ultimately, the jury was instructed that with respect to the February 2022, March 2023, and May 12, 2023 incidents, "[i]f you decide" by a preponderance of the evidence "that the defendant committed the uncharged domestic violence, you may but are not required to conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and, based on that decision, also conclude that the defendant was likely to commit and did commit kidnapping, false imprisonment, domestic violence, criminal threats, and assault with force likely to cause great bodily injury as charged here." (See CALCRIM No. 852A.) Further, the jury was instructed that "[i]f you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of kidnapping, false imprisonment, domestic violence, criminal threats, and assault with force likely to cause great bodily injury." (*Ibid*.) And the court instructed that "[t]he People must still prove each charge beyond a reasonable doubt" and that the jury should not consider the evidence of other domestic violence for any other purpose. (*Ibid*.)

**3.**

Garcia-Flores first contends that section 1109 violates the due process clause. In light of our Supreme Court's contrary rulings, we must disagree.

In *Falsetta*, our Supreme Court considered a due process challenge to another exception to the rule against propensity evidence: section 1108, which allows such evidence in sex offense cases if the evidence is admissible under section 352. (§ 1108, subd. (a); see *Falsetta, supra,* 21 Cal.4th at pp. 921-922.) *Falsetta*

9

held that "the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due process challenge." (*Id.* at p. 917.) Section 352 provides " 'a safeguard against the use of uncharged . . . offenses in cases where the admission of such evidence could result in a fundamentally unfair trial,' " ensuring consistency with the due process clause. (*Ibid.*) The courts of appeal have extended *Falsetta*'s reasoning to section 1109, concluding that it does not violate due process. (See, e.g., *People v. Johnson* (2010) 185 Cal.App.4th 520, 529; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1310; *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095-1096.)

More recently, our Supreme Court applied *Falsetta*'s holding to reject an identical due process challenge to section 1109. (See *People v. Baker* (2021) 10 Cal.5th 1044, 1089-1090 & fn. 6 [noting that the defendant "ma[d]e[] no serious effort" to argue that his due process challenge to section 1109 could succeed without overruling *Falsetta*, so the court declined to reach that question].) As in *Baker*, Garcia-Flores does not raise any argument that section 1109 is distinguishable from section 1108 under *Falsetta*; instead, he takes issue with our Supreme Court's reasoning in *Falsetta*. We therefore reject his contention.

**4.**

Garcia-Flores next argues that the admission of the evidence concerning the February 2022, March 2023, and May 12, 2023 domestic violence incidents violated section 352. We disagree.

Section 352 entails a fact-specific inquiry to determine whether the potential undue prejudice of the proffered evidence substantially outweighs its probative value. (See *People v. Megown* (2018) 28 Cal.App.5th 157, 164.) Evidence is unduly prejudicial under section 352 if it " ' " ' " ' uniquely tends to evoke an emotional bias against the defendant as an individual and . . .

10

has very little effect on the issues.' " ' " ' " (*People v. Kerley* (2018) 23 Cal.App.5th 513, 532 (*Kerley*).) We review the trial court's decision for abuse of discretion. (*Megown*, at p. 164; *Kerley*, at p. 532.)

To weigh whether propensity evidence should be admitted under section 352, the trial court considers, among other factors, "its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission." (*Falsetta*, *supra*, 21 Cal.4th at p. 917; see *Kerley*, *supra*, 23 Cal.App.5th at p. 535.) The probative value of the other acts evidence will be greater when the uncharged act is relatively similar to the charged offense, is close in time, and is corroborated by multiple sources of evidence. (*Falsetta*, at p. 917; *Kerley*, at p. 536.) Further, the risk of undue prejudice will be lessened where "the uncharged offenses resulted in actual *convictions* and a prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the other offenses, and that the jury's attention would not be diverted by having to make a separate determination whether defendant committed the other offenses." (*Falsetta,* at p. 917.)

The trial court could have reasonably concluded that the probative value of the three domestic violence incidents outweighed the potential for undue prejudice. As Garcia-Flores acknowledges, all three incidents were relatively close in time to the charged offenses. With respect to the February 2022 and March 2023 incidents, he concedes that they "were similar to the charged acts" because both assaults occurred in Garcia-Flores' car. It is true, as Garcia-Flores asserts, that the same witness,

11

K., was the original source of the evidence for both incidents, but her testimony was corroborated to some extent. K.'s mother observed bruises on her arms after the February 2022 assault, and K. reported the incident to the police, showing them undated photos depicting injuries consistent with her account. Similarly, K. shared details of the March 2023 assault with the police and showed them dated photos of her injuries. Further, the details of the February 2022 and March 2023 incidents were less extreme than those of the charged incidents because they did not involve use of a weapon or an extended assault. Given the relatively close proximity in time, the similarity to the charged offenses, and the partial corroboration, the probative value of the February 2022 and March 2023 incidents outweighed the risk of undue prejudice.

As for the May 12, 2023 incident, its probative value was increased because not only was it close in time to the charged offenses, but it was reported to the police, the recording of the 911 call provided some corroboration, and Garcia-Flores plead no contest to misdemeanor battery in connection with the incident. Further, Garcia-Flores does not dispute that, apart from propensity, the May 12, 2023 incident was also relevant to prove motive or intent at the time of the charged offenses, as the trial court held. (See § 1101, subd. (b).)

Garcia-Flores contends that the risk of undue prejudice outweighed the probative value because the circumstances of the May 12, 2023 assault were dissimilar to those of the charged offenses. Although the May 12, 2023 incident was not similar to the charged May 4, 2023 offense, the same is not true with respect to the charged October 5, 2023 offense. Both the May 12, 2023 incident and the October 5, 2023 offense involved "mutual combat" situations, as the trial court noted, and both involved an extended altercation between Garcia-Flores and K. The May 12, 2023 incident was unique in that a third party was involved, J.,

12

who allegedly attacked Garcia-Flores.  But the fact that Garcia-Flores may have fought back after his wife attacked him, if proven to the jury, would have been more likely to garner sympathy for him rather than undue prejudice against him.

In sum, we find no abuse of discretion by the trial court.

**B.**

Garcia-Flores contends that the trial court abused its discretion in permitting the prosecution to introduce, pursuant to section 1103, subdivision (b), evidence of a fourthinstance of domestic violence to rebut evidence presented by the defense that K. had a violent character.  We discern no abuse of discretion.

Section 1103 provides another exception to the general rule against propensity evidence.  Under section 1103, subdivision (a)(1), propensity evidence concerning the victim is not inadmissible under section 1101 if it is "[o]ffered by the defendant to prove conduct of the victim in conformity with the character or trait of character."  Section 1103, subdivision (b), further provides that if the defendant presents propensity evidence against the victim under subdivision (a)(1), then the prosecution is not precluded by section 1101 from presenting propensity evidence against the defendant.  (See *People v. Fuiava* (2012) 53 Cal.4th 622, 696.)  These provisions sought to " 'create[] a level playing field between prosecutors and defense attorneys, and ensure[] that juries are given a complete picture of both the defendant's and victim's character. ' " (*Ibid*.)  Although section 1103 does not expressly reference section 352, a trial court nonetheless retains discretion to limit propensity evidence under section 1103 "in the interest of fostering judicial efficiency, or preventing 'undue prejudice' to the defendant." (*Fuiava,* at p. 700; see *People v. Barrett* (2025) 17 Cal.5th 897, 953 (*Barrett*).)

Here, Garcia-Flores presented evidence that K. had previously been involved in fights with other people, including

13

two physical fights in 2022 involving punching and hair pulling. The prosecution then argued that, pursuant to section 1103, subdivision (b), it was entitled to introduce additional evidence of Garcia-Flores' propensity for violence. Over the defense's section 352 objection, the trial court ruled that, in light of the evidence of K.'s violent character that the defense had elicited, it would permit the prosecution to introduce evidence of an additional domestic violence incident from 2020.[5]

The prosecution then presented evidence concerning a domestic violence incident that occurred on December 31, 2020. K. testified that while she was attending a New Year's Eve party at a friend's house, she went outside after Garcia-Flores, who was there with his friends, called her and told her to come out. Once she came out, Garcia-Flores said he she needed to respect him and then slapped her. He also grabbed her by the arms. Garcia-Flores reached inside his pants, which made K. fear that he was reaching for a knife that she saw in the front pocket of his pants. One of his friends pulled him away as Garcia-Flores yelled that "if someone didn't make him leave, he would kill [her]." K. later told her brother and parents what happened but she did not report it to the police.[6]

Garcia-Flores argues that the trial court abused its discretion in allowing the evidence of the 2020 incident because its probative value was outweighed by the potential for undue prejudice, particularly when the risk of undue prejudice is considered in the context of the other incidents for which evidence was admitted by the court. We agree with him that the

---

[5] Earlier, in determining what evidence would be permitted pursuant to section 1109, the trial court had decided to exclude the 2020 incident because it was more remote in time than other incidents and "didn't seem that similar to the charged offenses."

[6] The trial court did not instruct the jury that it could conclude from evidence of the December 2020 incident that Garcia-Flores was disposed to commit domestic violence.

14

trial court was not *required* to allow the prosecution to present additional evidence of uncharged acts under section 1103, subdivision (b), but neither was the court required to exclude the evidence under section 352 in the circumstances here. (See *Barrett*, *supra*, 17 Cal.5th at p. 953.)

The probative value of this incident was lessened because it occurred over two years prior to the charged incidents and it was not corroborated. But apart from occurring outside of a vehicle, the 2020 incident was similar to the charged May 4, 2023 offense in that Garcia-Flores struck K. and threatened to kill her. Thus, the trial court reasonably could have concluded that the probative value of the 2020 incident in terms of Garcia-Flores' disposition for violence was not insignificant. The court also could have concluded that eliciting the details of the incident, which were fairly straightforward, was unlikely to be time-consuming or inflammatory. Although Garcia-Flores maintains that the 2020 incident was "much more serious" than the other uncharged acts because it occurred in public and required intervention by a friend, the trial court could have reasonably found that the assault—Garcia-Flores slapped K. once and grabbed her arms—was no more serious than the assaults in the uncharged and charged incidents, which involved choking, use of a weapon, or a more extended attack.

Ultimately, Garcia-Flores has not pointed to any *undue* prejudice flowing from the evidence of the 2020 incident, in the sense of evidence tending to invoke an emotional bias against the defendant but with very little effect on the actual issues. (See *Barrett*, *supra*, 17 Cal. 5th at p. 955.) Undue prejudice under section 352 " ' "is not synonymous with 'damaging.' " ' " (*Ibid*.) Even when considered with the evidence of other uncharged incidents presented to the jury, the trial court reasonably could have concluded that the probative value of this additional

15

incident was not substantially outweighed by the risk of undue prejudice.

**C.**

Citing section 352 as well as the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Garcia-Flores challenges the trial court's decision to exclude impeachment evidence concerning two altercations in which K. was involved before meeting him.  We conclude the trial court did not err in excluding the evidence.

Section 352 grants trial courts "broad" latitude to balance the probative value of impeachment evidence against concerns of undue prejudice, confusion, or consumption of time.  (See *People v. Harris* (2008) 43 Cal.4th 1269, 1291 (*Harris*); *People v. Bertsch and Hronis* (2026) 19 Cal.5th 183, 297-298.)  We review the trial court's decision to exclude impeachment evidence under section 352 for abuse of discretion.[7]  (See, e.g., *People v. Mendez* (2019) 7 Cal.5th 680, 705 (*Mendez*); *People v. Contreras* (2013) 58 Cal.4th 123, 152-153 (*Contreras*); *People v. Mendoza* (2011) 52 Cal.4th 1056, 1091; *Harris*, at pp. 1291-1292.)  Further, " ' "within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive,

---

[7] We reject Garcia-Flores' argument that a de novo standard of review applies here.  He cites *People v. Seijas* (2005) 36 Cal.4th 291, 304 and *People v. Albarran* (2007) 149 Cal.App.4th 214, 224, fn. 7, for the proposition that we must review the trial court's evidentiary ruling de novo because the question implicates his Fifth, Sixth, and Fourteenth Amendment rights to present a complete defense and confront and cross-examine witnesses.  However, neither case involved review of an evidentiary ruling under section 352.  (See *Seijas*, at p. 304 [applying independent review to a trial court's ruling on a witness's assertion of the privilege against self-incrimination]; *Albarran*, at p. 224 & fn. 7 [reviewing de novo a trial court's order denying a motion for new trial].)

prejudicial, confusing of the issues, or of marginal relevance." ' "
(*Harris*, at p. 1292; see *People v. Brown* (2003) 31 Cal.4th 518,
545 ["reliance on . . . section 352 to exclude evidence of marginal
impeachment value that would entail the undue consumption of
time generally does not contravene a defendant's constitutional
rights to confrontation and cross-examination"].) The
confrontation clause and related constitutional guarantees are
not implicated unless "the excluded evidence would . . . have
produced a ' " 'significantly different impression' " ' of the
witness's credibility." (*Contreras*, at p. 152; see *People v.
Gonzalez* (2021) 12 Cal.5th 367, 406 (*Gonzalez*).)

At trial, K. testified that her "personality changed" after
she started going out with Garcia-Flores in that there was a
"change in [her] mood" and she was "mad a lot." On cross-
examination, K. admitted to engaging in two physical fights at
school in 2022. One of the fights, with a woman, involved hair
pulling and punches. In the other fight, K. "punched a male
student multiple times." K. also admitted that on another
occasion, she was disciplined for standing outside a teacher's
classroom, with a group, "waiting to beat up another student." In
addition, K. admitted that she talks to her friends about "fighting
people" and "beating up people when [they] talk mess to" her and
she has told her friends that she "would beat the fuck out of a
person." K. maintained, however, that she did not "typically"
engage in fights at school before she began dating Garcia-Flores.
The defense then sought permission to question K. about two
physical fights she had been involved in at school in 2018, the
year before the start of her relationship with Garcia-Flores.

In denying the request on section 352 grounds, the trial
court reasoned that K. was "merely 12 years old" at the time of
the 2018 incidents, so the court "just [didn't] see the relevance
there." The court explained that the "relatively small degree of
probative value" had to be weighed against the "undue time that

17

it would consume" and "the prejudicial value to the witness." Further, the court had already allowed the defense to question K. about three disciplinary incidents from 2022 and 2020.

The court also noted that if the defense questioned K. about incidents that occurred when she was 12, the defense "might be opening the door to reference that" the couple "started dating when she was 13." The court had previously granted the defense's request that K. "not be referenced as a child or a juvenile or as a minor." In connection with that request, Garcia-Flores had argued that "highlight[ing]" K.'s age at the time they were dating would be "highly prejudicial" to him because the jury could be aware that statutory rape could be an issue, even though he was not charged with such a crime.

We discern no statutory or constitutional error here. Evidence that K. had been involved in two fights when she was a 12-year-old child had minimal probative value on the question of her character for violence at the time of the charged offenses in 2023, when she was 17 or 18. Nor was the impeachment value of the evidence particularly great; contrary to Garcia-Flores' contention, K. did not claim that she was never involved in "any" fights at school before her relationship with him. She testified only that she had not "typically" been involved in school fights before they started dating. Evidence that she was previously involved in two fights would not establish that "she lied on the stand," as Garcia-Flores asserts. For this reason, the evidence would not have led the jury to form a significantly different impression of K.'s character for truthfulness, so we reject Garcia-Flores' constitutional challenge.[8] (See *Mendez*, *supra*, 7 Cal.5th

---

[8] Even if the evidence did bear on K.'s character for truthfulness, without the evidence her credibility was already "extremely weak," as Garcia-Flores elsewhere maintains, which further undermines his constitutional challenge. (See *Harris*, *supra*, 43 Cal.4th at p. 1292 [rejecting constitutional challenge to

at p. 704 ["excluding ' "evidence of marginal impeachment value" ' under . . . section 352 ' "generally does not contravene a defendant's constitutional right[] to confrontation" ' "]; see also *Gonzalez, supra,* 12 Cal.5th at p. 406; *Contreras, supra,* 58 Cal.4th at p. 152.)

The trial court was also understandably concerned that admission of the evidence would highlight to the jury that K. was only 13 when she started dating Garcia-Flores. The fact that K. was 12 at the time of the fights in 2018 would have been relevant to the prosecution's potential strategy for rebutting the evidence, given that it is common knowledge that children at that age may be more impulsive and less capable of regulating their emotions than older teenagers. Yet any questioning about K.'s age at the time could have distracted the jury and prejudiced Garcia-Flores by causing the jury to speculate about statutory rape.

In sum, the trial court did not err in excluding evidence of the 2018 fights.

## D.

Because we have found no error, we reject Garcia-Flores' claim of cumulative error.

## DISPOSITION

The judgment is affirmed.

BURNS, J.

WE CONCUR:


JACKSON, P. J.
SIMONS, J.

*People v. Garcia-Flores (A172890)*

exclusion of impeachment evidence where the witness's "truthfulness was already seriously compromised"].)

19